## PEARSE v. UNITED STATES.
### No. 4784.

Circuit Court of Appeals. Third Circuit.
June 1, 1932.

Charles F. Lynch, of Newark, N. J., for appellant.

Phillip Forman, U. S. Atty., of Trenton, N. J., and Samuel Cohen, of Newark, N. J., for the United States.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge.

The District Court adjudged Frederic M. P. Pearse, an attorney, in contempt of court. Mr. Pearse, seemingly undisturbed by the penalty imposed but moved by the gravity of the finding, promptly took and has vigorously pressed this appeal.

It is an odd case. Singularly enough, it is one in which no offense was observed by the judge and no feeling shown until days after the trial when, on handing down the opinion, feeling flamed high. We shall do nothing more than determine just what happened and decide the single question whether, as a fact, contempt of court had been committed.

The United States filed a bill in equity under the National Prohibition Act (title 2, § 22 [27 USCA § 34]) to abate a nuisance, making Gschrey, the proprietor, Brunmenaier, an employee, and William Loughlin and Louise McCormick, owners of the place, defendants. In due course there was filed an answer whose opening words were: "The defendants above named, appearing by Frederic M. P. Pearse, their solicitor, and answering the complaint herein, say:" All material averments of the bill were denied including those of a paragraph which charged that Loughlin and McCormick were owners of the premises.

The night before the day the case was to be called, Mr. Pearse began preparation for trial. On being handed the papers in the case he discovered that someone in his office, who had drawn and filed the answer, had caused him to appear and plead for all defendants when in fact he had been retained by but two, Loughlin and McCormick, the owners. Promptly the next morning he called this to the attention of the United States Attorney and immediately upon the opening of court disclosed the mistake to the judge and moved for leave to amend the answer by limiting his appearance to those whom he actually represented.

An awkward situation arose from the fact that Gschrey, one of the other two defendants, had not been served by process and was not represented by counsel. The learned judge, taking no immediate action, was not inclined to allow Mr. Pearse to withdraw as solicitor for these two defendants "at the last moment" and was disposed to hold him to his appearance, as was indicated by his statement that he would take the matter under advisement and by his direction that the trial proceed. The government proved its case by two witnesses and the defendant owners proved their case by one witness, Loughlin, one of the owners. The trial lasted about ten minutes.

In these few facts contempt of court, if any, must be found. The court had not suggested and apparently no one had thought that contempt had been committed by Mr. Pearse. It was not until ten days later that the learned trial judge, on handing down his opinion and order padlocking the premises, apprised Mr. Pearse of a charge of contempt of court by adjudging him guilty at the same time.

The learned trial judge, after working all summer in an earnest effort to clear the criminal docket in the District of New Jersey, doubtless had cause to feel aggrieved by the tactics of some attorneys in liquor cases, particularly by their efforts to postpone trials. Evidently regarding Mr. Pearse (with whose high standing at the New Jersey bar he was not acquainted) as a composite of these practitioners, the learned judge, in his opinion, addressed to him caustic denunciations which need not be repeated. It will be enough to quote the two concluding paragraphs of the opinion which embrace the findings of contempt.

"The defenses made are an affront to equity and * * * discredit the application to withdraw so long delayed and in surprise at the strategic last moment made, which application is denied.

" * * * The court finds the allegations of the bill are true, the denials of the answer untrue, and concludes plaintiff is entitled to recover and decree as prayed. * * * upon counsel is imposed a fine in amount fifty dollars, for causes, reasons and ends aforesaid, obstruction of justice and contempt committed in the presence of the court, leaving to the local bench and bar the onus of any further action by them deemed proper."

It should be noted that the learned trial judge did not at the trial accuse Mr. Pearse of improper conduct. There was, in conse-

quence, no hearing for contempt, formal or informal; indeed, there was not even colloquy on the subject. The offenses with which Mr. Pearse might have been charged must therefore be gathered from the offenses found which, viewing them as ultimate facts, are "obstruction of justice" and "contempt committed in the presence of the court." These ultimate findings are predicated on two preliminary findings of fact: (1) The attorney's late motion for leave to withdraw his appearance for certain defendants; and (2) his filing a "false" answer.

 The motion to withdraw his appearance as solicitor for two of the defendants, though continuing as solicitor for the remaining defendants, may have been an honest motion made fully within the rights of an attorney because a necessary motion under the facts, or it may have been a tactical motion based on an untruth. There is no evidence whatsoever of the latter; there is evidence of the former. We cannot find on this showing that Mr. Pearse committed contempt in the presence of the court, nor can we find that he obstructed justice by his motion to withdraw, for, as it turned out, the motion was suspended during the hearing and the case proceeded to trial and decree.

 The alleged untruthfulness of the answer filed by Mr. Pearse doubtless had its rise in the distinction, sometimes lost sight of, between an equity proceeding to abate a nuisance under the National Prohibition Law, which though civil in form is criminal in nature, and a straight out criminal prosecution under the same act. Since the defendants by their answer denied all allegations of the bill without regard to the facts, as they properly could deny all the allegations of an indictment, one paragraph of the answer is bad and in a sense is untrue in that it failed to admit, as required by Equity Rule 30 (28 USCA § 723) the fact of ownership on which the plaintiff relied and of the truth of which the defendants were informed. Yet the word "false" can hardly be applied to this paragraph in view of the way Mr. Pearse acted under it, as shown by this short sequence of events: The plaintiff by paragraph 4 of the bill charged that Loughlin and McCormick were owners of the premises; the defendants by paragraph 4 of the answer denied the allegation of that paragraph of the bill. That technically placed the burden of proving ownership upon the government and, had the defendants stood mute, would to that extent, we may assume, have obstructed or hindered justice. But Mr. Pearse in the first

minute of the trial and in his first words to the court admitted that his two clients (named in the answer) were the owners, repeating the admission several times. At the trial the government closed its case without proving ownership, evidently relying on the admission. When the government rested, Mr. Pearse immediately put Loughlin upon the stand and, contrary to the literal denial of ownership in the answer, proved by him that he and his sister, Louise McCormick, were the owners of the premises, continuing with the defense that they were ignorant of any violations of the law thereon. Thus Mr. Pearse, without suggestion from the government or the court, proved by his own witness the averment of the government's bill as to ownership, though in doing so he went contrary to the denial of ownership in the answer, which clearly indicates that the denial in the answer was a plain mistake of which no advantage was taken and as to which no harm was done. This action, it seems to us, exonerated him from any lack of truth or exactness in the answer and aided rather than obstructed the administration of justice.

We really cannot find a factual basis for the judgment of contempt. Therefore we are constrained to hold that the learned trial judge, under a long strain of criminal business of a character not altogether pleasant, fell into error.

The judgment of contempt is reversed.